IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | No. 1:20-CV-01416 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SHIPPENSBURG UNIVERSITY OF PENNSYLVANIA, | |
| Defendant. | |

MEMORANDUM OPINION

MARCH 7, 2022

I.     BACKGROUND

Jane Doe sued Shippensburg University of Pennsylvania. She alleges quid pro quo sexual harassment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, as well as intentional infliction of emotional distress and negligent supervision under Pennsylvania law. Shippensburg University answered Doe's complaint. And after discovery closed, Shippensburg University moved for summary judgment.

Shippensburg University's motion for summary judgment is now ripe for disposition. For the reasons below, it is denied in part and granted in part.

## II. DISCUSSION

### A. Standard of Review

I begin my analysis with the standard of review that undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[1] The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[2] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5] And a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[2] *Id.* at 324.
[3] Fed. R. Civ. P. 56(a).
[4] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[5] *Clark*, 9 F.3d at 326.
[6] *Id.*

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8]

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."[9]  Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[10]  In answering that question, the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[11]  The evidentiary record at trial will typically never surpass what was compiled during discovery.

---

[7]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).
[8]  *Id*.
[9]  *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252 (alterations in original)).
[10]  *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).
[11]  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[12] For example, while "at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."[13] The moving party must identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[14] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[15]

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) citations to particular parts of materials in the record that go beyond mere allegations; (2) a showing that the materials cited do not establish the absence or presence of a genuine dispute; or (3) a display that an adverse party cannot produce admissible evidence to support the fact.[16]

---

[12] *Celotex*, 477 U.S. at 323.
[13] *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).
[14] *Id.* (internal quotations omitted).
[15] *Id.*
[16] Fed. R. Civ. P. 56(c)(1).

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[17] When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[18] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[19] Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[20] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[21] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[22]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[23] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[24]

---

[17] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).
[18] *Liberty Lobby*, 477 U.S. at 250.
[19] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[20] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[21] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[22] Fed. R. Civ. P. 56(c)(3).
[23] *Liberty Lobby*, 477 U.S. at 249.
[24] *Id*. at 249–50 (internal citations omitted).

### B.     Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts.

In August 2018, Shippensburg University accepted Doe to pursue a master's degree in clinical mental health.[25] Shippensburg University also employed Doe as a graduate assistant and then the Interim Director of Testing.[26] Doe's supervisor was Dr. Roe, an Assistant Dean in the Office of Professional, Continuing, and Distance Education ("OPCDE").[27] In turn, Roe's supervisor was the Dean of OPCDE.[28]

In August 2019, Doe and Roe attended a conference in New Orleans, Louisiana.[29] Roe complained about Doe's behavior at this conference to the Dean of OPCDE.[30] And Doe copied the Dean on an email requesting leave and complaining about Roe.[31]

After the New Orleans conference, Shippensburg University terminated Doe's employment.[32] Shippensburg University also referred the matter to its social equity office, which investigated Roe.[33] Eventually, Shippensburg University placed Roe on administrative leave.[34]

---

[25]   Doc. 1 at ¶ 7.
[26]   Doc. 20 at ¶ 1.
[27]   *Id.* at ¶ 5.
[28]   *Id.* at ¶ 6.
[29]   *Id.* at ¶ 19.
[30]   *Id.* at ¶¶ 20–23, 33–34.
[31]   *Id.* at ¶ 39.
[32]   *Id.* at ¶ 61.
[33]   *Id.* at ¶¶ 68–69.
[34]   *Id.* at ¶ 69.

### C. Analysis

#### 1. Title IX Claim

First, Doe alleges quid pro quo sexual harassment under Title IX. "To succeed on a Title IX sexual harassment claim, a student must show: (1) quid pro quo sexual harassment, or a sexually hostile educational environment; (2) actual notice by an 'appropriate person' who has the authority to take corrective measures; and, (3) a response to the harassment that amounts to deliberate indifference."[35] I address each element in turn. In sum, Shippensburg University's motion for summary judgment is denied as to Doe's Title IX claim.

##### a. Quid Pro Quo Sexual Harassment

Doe proceeds on a theory of quid pro quo sexual harassment, not a hostile work environment.[36] "To establish a quid pro quo sexual harassment claim [Doe] must show (1) that she belongs to a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; and, (4) that a tangible educational action resulted from her refusal to submission to or rejection of the sexual harassment."[37] Again, I address each element of quid pro quo sexual harassment in turn.

---

[35] *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2010 WL 4853700, at *14 (M.D. Pa. Nov. 23, 2010).
[36] Doc. 34 at 16 ("This case is not a retaliation or a hostile work environment case. It is a quid pro quo case.").
[37] *E.N.*, 2010 WL 4853700, at *14.

First, Doe "is a female and, thus, belongs to a protected class."[38] Second, Doe testifies that Roe repeatedly made sexual advances toward her, including propositions to participate in a ménage à trois with Roe and a man.[39] Doe also testifies that she rejected these advances.[40] From these solicitations and rejections, a reasonable factfinder could conclude that Doe was subject to unwelcome sexual harassment based on her sex.[41] So Doe survives summary judgment as to the first three elements.

As for the fourth element, Doe and Roe attended a conference in New Orleans starting on August 6, 2019.[42] At this conference, Roe asked for a key to Doe's room, but Doe declined.[43] Doe also declined Roe's request to accompany her on a date with a man.[44] Not long after, on August 12, 2019, Roe emailed the Dean to complain about Doe's behavior at the conference.[45] And on August 20, 2019, Shippensburg University terminated Doe's employment.[46]

Notably, these events occurred within a few days or weeks of each other. This close timing, combined with the Dean's admission that Roe's email influenced the

---

[38] *Id.*
[39] Doc. 34-3.
[40] *Id.*
[41] *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2011 WL 3608544, at *13 (M.D. Pa. July 5, 2011) ("Consequently, she has put forth facts demonstrating quid pro quo sexual harassment."), *report and recommendation adopted,* No. 1:09-CV-1727, 2011 WL 3608490 (M.D. Pa. Aug. 16, 2011).
[42] Doc. 34-4 at 12.
[43] Doc. 34-5 at 8.
[44] Doc. 34-3 at 84–85, 121.
[45] Doc. 34-12.
[46] Doc. 34 at 16.

decision to terminate Doe,[47] allows a reasonable factfinder to conclude that Doe's termination resulted from her refusal to submit to or rejection of Roe's advances. Accordingly, Doe survives summary judgment as to the fourth element of quid pro quo sexual harassment too.

Shippensburg University counters that it would have terminated Doe regardless of Roe's reports about Doe's behavior.[48] It adduces testimony that Doe's position was temporary and was going to end at some point soon anyway.[49] But in her deposition, the Dean testified that Roe's complaint about Doe's behavior "was the final decisionmaker" and "was . . . basically the reason" for Doe's termination.[50] This conflicting testimony creates a genuine dispute of material fact about the reasons for Doe's termination. So I cannot grant Shippensburg University summary judgment on this issue.

### b.   Notice

Doe "must also establish that an appropriate person had actual notice of the sexual harassment."[51] "An 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the

---

[47] Doc. 34-4 at 10, 16.
[48] Doc. 26 at 3, 9–11.
[49] Doc. 34-9 at 13.
[50] Doc. 34-4 at 10, 16.
[51] *E.N.*, 2011 WL 3608544, at *14.

discrimination."[52]  "While knowing of the mere possibility of harassment is not sufficient, absolute certainty that harassment has occurred is not required."[53]

Here, Shippensburg University does not dispute that the Dean was an appropriate person for Title IX reporting purposes.[54]  Doe testified that at a pool outside the Dean's home, Doe complained that Roe was "interfering with the work" and "putting [Doe] in very awkward positions."[55]  But the Dean apparently responded that she did not "want to know."[56]

And on August 12, 2019, Doe copied the Dean on an email complaining about Roe's "harass[ment]."[57]  Doe also testified that the Dean stated that she "didn't want to know" about Roe's harassment at an August 14, 2019, meeting.[58]  From these interactions, a reasonable factfinder could conclude that the Dean had notice of Roe's sexual harassment.  Accordingly, Doe has adduced evidence of notice.

### c.    Deliberate Indifference

Next, Doe must prove deliberate indifference.  "An official decision not to remedy any type of discrimination demonstrates deliberate indifference.  A clearly

---

[52] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).
[53] *E.N.*, 2011 WL 3608544, at *14.
[54] Doc. 26 at 4–8; Doc. 40 at 8–12.
[55] Doc. 34-3 at 48–49.
[56] *Id.* at 49.
[57] Doc. 34-13.
[58] Doc. 34-3 at 101–03.

unreasonable response to actual notice of harassment also amounts to deliberate indifference."[59]

Here, a genuine dispute of material fact exists as to whether Shippensburg University's response to Roe's harassment was "clearly unreasonable." On the one hand, Shippensburg University investigated and placed Roe on leave after terminating Doe.[60] To a reasonable factfinder, this may indicate that Shippensburg University's response was not clearly unreasonable.

On the other hand, Doe testified that the Dean repeatedly responded that she "didn't want to know" about Roe's harassment.[61] And as I explained above, Doe's termination may have resulted from her refusal to submit to or rejection of Roe's advances. Viewed in a light most favorable to Doe, this response may be "clearly unreasonable" to a reasonable factfinder. Accordingly, there is a genuine dispute of material fact as to deliberate indifference.[62]

---

[59] *K.E. v. Dover Area Sch. Dist.*, No. 1:15-CV-1634, 2017 WL 4347393, at *10 (M.D. Pa. Sept. 29, 2017) (citations omitted) (denying school district's motion for summary judgment in Title IX sexual harassment case).

[60] Doc. 20 at ¶¶ 68–69.

[61] Doc. 34-3 at 48–49, 101–03.

[62] *See Hall v. Millersville Univ.*, 22 F.4th 397, 411 (3d Cir. 2022) (reversing summary judgment in university's favor because "A reasonable jury could still conclude Millersville acted with deliberate indifference"); *see also D.B. v. Tredyffrin/Easttown Sch. Dist.*, No. CV 17-2581, 2020 WL 6262181, at *19 (E.D. Pa. Oct. 23, 2020) ("The Court concludes that TESD's liability under Title IX under plaintiff's first theory—Assistant Principal DiLella, Assistant Principal Bankert, and Mr. Austin acted with deliberate indifference . . . must be resolved by a jury. The Court thus denies . . . summary judgment on plaintiff's Title IX claim.").

### 2. State-Law Claims

Finally, Doe alleges intentional infliction of emotional distress and negligent supervision under Pennsylvania law. But as a state university, Shippensburg University "shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."[63] Indeed, Doe does not dispute that sovereign immunity bars her state-law claims.[64] Nor does she argue that any exceptions to sovereign immunity apply here.[65] Accordingly, Shippensburg University's motion for summary judgment is granted as to Doe's state-law claims.

### III. CONCLUSION

For the foregoing reasons, Shippensburg University's motion for summary judgment is denied as to Doe's Title IX claim. But it is granted as to Doe's state-law claims. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[63] 1 Pa.C.S. § 2310.
[64] Docs. 34, 44-2.
[65] *Id.*